STATE OF NEBRASKA, APPELLEE, V. CURTIS E. TURNER,
APPELLANT.
354 N.W.2d 617

Filed July 27, 1984.   No. 83-757.

Daniel W. Ryberg, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Shanahan, J.

Curtis E. Turner was charged with the commission of two felonies—robbery (Neb. Rev. Stat. § 28-324(1) (Reissue 1979)) and use of a knife to commit the robbery (Neb. Rev. Stat. § 28-1205(1) (Reissue 1979)). By a plea bargain the charge regarding use of a knife to commit the robbery was dismissed by the county attorney. In exchange for such dismissal and in accordance with the plea bargain, Turner entered a plea of guilty to the charge of robbery. After a presentence investigation the district court for Douglas County sentenced Turner to a term of 7 to 10 years in the Nebraska Penal and Correctional Complex. Turner appeals. We affirm.

Prosecution of Turner arose out of the robbery of Town and Country Market in Omaha on May 16, 1983. Four men were charged with the robbery, namely, Marcy Davis, Tranell Seals, Donald Davis, and Turner. The record does not reflect the identity of attorneys representing individuals of the quartet before any appearances in the district court, although Turner's brief indicates counsel for the various defendants. For the purpose of background we accept Turner's statements designating counsel. After representing the four defendants at their preliminary hearing, the Douglas County public defender's office remained as attorney for Seals but withdrew as counsel for the other three defendants. An attorney in private practice was appointed to represent Donald Davis, and another attorney engaged in private practice was appointed for Marcy Davis and Turner.

Although Marcy Davis and Turner had entered pleas of not guilty, a plea bargain was negotiated between the prosecutor and the attorney for Davis and Turner. The plea bargain required the State to dismiss the charge involving use of a knife to commit the robbery, provided Davis and Turner entered a plea of guilty to the robbery charge. Section 28-324 contains: "(1) A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever. (2) Robbery is a Class II felony." As a Class II felony, conviction of robbery is punishable by incarceration for a term of 1 to 50 years. See Neb. Rev. Stat. § 28-105 (Reissue 1979).

At a joint hearing in the district court on July 27, Davis and Turner, through their mutual counsel, expressed their wish to withdraw the pleas of not guilty and to plead guilty to robbery, in accordance with the plea bargain. The judge proceeded to ask Davis and Turner about promises made beyond the plea bargain, threats, and indication of punishment on conviction. Having assured himself that the change of plea for each defendant was voluntary, the judge discussed the crime charged in the information:

> [The information] alleges that on or about May 16th of this year in Douglas County that you did then and there forcefully and by violence or by putting in fear take money

from the personal protection of Gregory J. Lyons, that money being the property of the Town & Country Market, and with the intent to steal that money. Have you talked over the information and the words that I have just read to you with your attorney?

(Lyons was the clerk in the store at the time of the robbery.) Davis and Turner each acknowledged talking with their attorney about the charge and understanding the charge in the information. The court informed Davis and Turner about the penalty which could be imposed upon conviction of robbery. After the defendants told the court that the penalty for robbery was understood, the judge meticulously explained the pleas available concerning the charge of robbery, the right to stand mute, and the constitutional rights given up by a plea of guilty. Each defendant acknowledged he understood that his plea of guilty would be "giving up those constitutional rights." The court explained the necessity and function of a presentence investigation and report "to help me determine what sentence" should be imposed after conviction, and cautioned the defendants that the court was not bound by any recommendations on sentence. Each defendant then withdrew his plea of not guilty and entered a plea of guilty to robbery.

Next, the court sought the factual basis for the guilty pleas. Requested by his attorney to "tell the judge what happened," Davis recounted the robbery, and in particular told the court about the presence of a knife: "So I think he [Lyons, the clerk] saw Curtis with the knife. Curtis didn't have it out, just had it on the side. I never seen him pull it out or nothing, but . . . . So he handed us the money. . . ." After a colloquy between the court and defendants' counsel, the following conversation occurred as indicated, in response to the court's inquiry of the prosecutor:

THE COURT: Do you have anything to add . . .?

[PROSECUTOR]: Why don't you hear from Mr. Turner.

THE COURT: Perhaps that is a good idea. You tell us also, Mr. Turner.

MR. TURNER: It was pretty hot that night. Went to the Town & Country. We was shopping for things to get. I

got what I wanted. I went over to the counter. I ordered a couple of packs of cigarettes. He rung everything up and I had a knife right here, setting right here. As I was going for the money he seen the knife and he knew something was happening. He got to backing up. He just kind of like froze and handed me the money in cash. I grabbed the money out of the cash register and he got some more money out of the back. That's when my man got the money out of the back. We went on and left.

Shortly after Turner described the robbery to the court, the prosecutor added:

[PROSECUTOR]: Mr. Turner tells it pretty much as the victim remembers it, Judge. The victim, Mr. Lyons, who was the employee of the Town & Country does add that he received a few directives from the three people. There were a total of three people in the store . . . . These parties were apprehended in a car in just a matter of minutes after it happened approximately a mile away. . . .

I am satisfied with Mr. Turner's statement.

On September 9, at separate but contemporaneous sentence hearings for Davis and Turner, the presentence investigation and report to the court disclosed that Turner was a "functional illiterate" and that Turner admitted having the knife during the robbery of Town and Country. In the course of the sentence hearings the defendants' attorney mentioned that Turner, not Davis, had the knife during the robbery. At the conclusion of the hearings, the court sentenced Turner to a term of 7 to 10 years and Davis to a term of 4 to 8 years.

Turner has appealed and assigned three errors: (1) Turner's guilty plea to robbery was not made intelligently, because the court did not inform Turner of the "nature" of the charge; (2) Turner did not have effective assistance of counsel due to his attorney's simultaneously representing Turner's codefendant, that is, a conflict of interest depriving Turner of effective assistance of counsel; and (3) Turner's sentence is excessive under the circumstances.

An accused is entitled to be informed of the nature of the charge against him. See *State v. Tweedy*, 209 Neb. 649, 309 N.W.2d 94 (1981). In criminal proceedings the complaint, in-

formation, or indictment is constitutionally sufficient (1) if there is a correct statement of the elements of the offense charged so that a defendant knows the charge against which he must defend, and (2) if the formal, written accusation (complaint, information, or indictment) enables the defendant to plead an acquittal or conviction in bar of any future prosecution for the same offense. See, *State v. Abraham*, 189 Neb. 728, 205 N.W.2d 342 (1973); *Hamling v. United States*, 418 U.S. 87, 94 S. Ct. 2887, 41 L. Ed. 2d 590 (1974). Generally, it is sufficient that the complaint, information, or indictment set forth the offense in the words of the statute itself, so long as the statutory language fully, directly, and expressly, without uncertainty or ambiguity, contains all the elements necessary to constitute the offense to be punished. See *Hamling v. United States, supra.*

Although he does not assert that the information filed is deficient in charging the crime of robbery, Turner does contend that the trial court's reference to the information was inadequate and prevented Turner from understanding the nature of the charge against him. In the context of this case *nature* means "the essential character of a thing; quality or qualities that make something what it is." Webster's New Universal Unabridged Dictionary 1197 (1983). There was nothing incorrect or deceptive in the court's reference to the charge contained in the information. The statutory language defining the crime of robbery and the trial court's use of words or phrases such as "forcefully," "putting in fear," "take money," and "steal" are not judicial jargon, technical terminology, or words with mysterious meaning which place recognition of the offense and comprehension of its elements beyond the grasp of ordinary intelligence. Informing a defendant about the nature of a charge levied does not require a court to provide a spontaneous or unsolicited explanation of the offense word by word in some geometric progression of definitions. If there is no quarrel about the clarity and sufficiency of a statute defining the crime, there can be no quarrel with a court's question-free explanation of a crime in terms of the statutory language pertaining to the offense. Moreover, the factual basis immediately supplied by Turner in response to the court's inquiry provides an insight into Turner's awareness and knowledge of the charge against

him; for example, "I had a knife" and, in reference to the store clerk, "He got to backing up. He just kind of like froze and handed me the money in cash." That graphic description by Turner demonstrates his clear realization of the conduct condemned in the crime of robbery, and an unquestionable understanding of the law in relation to his actions. The requirement that an accused be informed of the nature of the charge against him is satisfied if, as in this case, the record discloses that the defendant had fair notice of what he was being asked to admit. See, *State v. Williams*, 122 R.I. 32, 404 A.2d 814 (1979); *In re Ronald E.*, 19 Cal. 3d 315, 562 P.2d 684, 137 Cal. Rptr. 781 (1977); *State v. Ohta*, 114 Ariz. 489, 562 P.2d 369 (1977). Additionally, in response to the trial court's question about understanding the information filed, Turner assured the court that he had "talked it over" with his attorney. We are compelled to the conclusion that Turner understood the nature of the charge against him and that all other requirements imposed by *Tweedy* concerning a guilty plea have been satisfied.

Before addressing Turner's question regarding his counsel's alleged conflict of interest, we believe it advisable to examine the characteristics of a conflict of interest. A conflict of interest places a defense attorney in a situation inherently conducive to divided loyalties. See *Mitchell v. Maggio*, 679 F.2d 77 (5th Cir. 1982). The phrase "conflict of interest" denotes a situation in which regard for one duty tends to lead to disregard of another (*United States v. Miller*, 463 F.2d 600 (1st Cir. 1972)); where a lawyer's representation of one client is rendered less effective by reason of his representation of another client (*Spindle v. Chubb/Pacific Indem. Group*, 89 Cal. App. 3d 706, 152 Cal. Rptr. 776 (1979)); or where it becomes a lawyer's duty on behalf of one client to contend for that which his duty to another client would require him to oppose (*Zimmer v. Gudmundsen*, 142 Neb. 260, 5 N.W.2d 707 (1942), and *The Florida Bar v. Moore*, 194 So. 2d 264 (Fla. 1966)). A conflict of interest exists "whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing." *Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir. 1975).

In criminal proceedings a defendant's right to effective counsel includes a lawyer's representation free from conflicting interests. See *Glasser v. United States*, 315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942). See, also, U.S. Const. amend. VI; Neb. Const. art. I, § 11; Moore, *Conflicts of Interest in the Simultaneous Representation of Multiple Clients: A Proposed Solution to the Current Confusion and Controversy*, 61 Tex. L. Rev. 211 (1982); Note, *The Right to Counsel of One's Choice: Joint Representation of Criminal Defendants*, 58 Notre Dame Law. 793 (1983); Note, *Conflicts of Interest in the Representation of Multiple Criminal Defendants: Clarifying Cuyler v. Sullivan*, 70 Geo. L.J. 1527 (1982).

However, a sole attorney's multiple representation of codefendants is not per se a violation of the constitutional guarantee of effective assistance of counsel. See *Holloway v. Arkansas*, 435 U.S. 475, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). "An 'attorney representing two defendants . . . is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial.' " *Holloway v. Arkansas, supra* at 485.

> But nothing in our precedents suggests that the Sixth Amendment requires state courts themselves to initiate inquiries into the propriety of multiple representation in every case. Defense counsel have an ethical obligation to avoid conflicting representations and to advise the court promptly when a conflict of interest arises during the course of trial. Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. . . . Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.
>
> . . . .
>
> In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. . . .
>
> . . . Thus, a defendant who shows that a conflict of

interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. . . . But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. . . .

. . . We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

*Cuyler v. Sullivan,* 446 U.S. 335, 346-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

Further, as the U.S. Supreme Court expressed in *Strickland v. Washington,* 466 U.S. ____, 104 S. Ct. 2052, 2067, 80 L. Ed. 2d 674 (1984): "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict of interest adversely affected his lawyer's performance.' " Citing *Cuyler v. Sullivan, supra.*

A conflict of interest must be actual rather than speculative or hypothetical before a conviction can be overturned on the ground of ineffective assistance of counsel. See *Johnson v. Hopper,* 639 F.2d 236 (5th Cir. 1981).

We have already determined that Turner's guilty plea was knowingly and intelligently made according to the standards of *State v. Tweedy,* 209 Neb. 649, 309 N.W.2d 94 (1981). There is no indication whatsoever, and Turner does not contend, that the guilty plea was the product of any conflict of interest on the part of Turner's lawyer. We note that Turner never objected to his counsel's representation of the codefendant, Davis. In response to the trial court's directive, "You tell us" what happened concerning the robbery, Turner, unprompted by counsel, acknowledged that he had a knife during the robbery. Turner's statement about the knife resulted from the court's effort to determine whether there was a factual basis for the guilty plea. Consequently, it was Turner himself who actively brought out the fact that he brandished a knife during the robbery. Rather than lying to the court or remaining silent, Turner, without any

instruction from counsel, opted to respond truthfully to the court's directive to provide facts as a basis for accepting the guilty plea. Turner's statement about the knife corroborated and repeated his codefendant's, Davis', description of the robbery. Where codefendants' statements are largely corroborative or repetitive, there is no conflict. See *United States v. Mers*, 701 F.2d 1321 (11th Cir. 1983). Furthermore, after acknowledging in open court that he had the knife, Turner reaffirmed such fact to the probation officer responsible for the presentence investigation and report. When the guilty plea was entered, the court told Turner that such report would be used to determine the appropriate sentence under the circumstances. Even if Turner's attorney had never mentioned the knife at the sentence hearing, Turner's acknowledgment about the knife when his guilty plea was accepted and the contents of the presentence report foreclosed any question about variable culpability which might otherwise attach to the one handling the knife during the robbery. Any remarks about the knife spoken by Turner's counsel at the sentencing hearing merely reiterated information already possessed by the trial court, that is, information previously elicited without instruction by counsel and also reported to the court by the probation officer. See *United States v. Mari*, 526 F.2d 117 (2d Cir. 1975). The real clash of interests and actual antagonism necessary for a conflict of interest does not exist in the case before us. Turner has failed to establish an actual conflict of interest which adversely affected his lawyer's performance. There is no merit to Turner's claim that he was deprived of effective assistance of counsel due to a conflict of interest on the part of his attorney.

In the absence of an abuse of discretion by the sentencing court, a sentence imposed within the statutory limits will not be disturbed on appeal. See *State v. Parks*, 212 Neb. 635, 324 N.W.2d 673 (1982). Turner has submitted the presentence investigations and reports for Marcy Davis and Tranell Seals, who were also convicted of robbing the Town and Country Market and were sentenced by the same judge who sentenced Turner. Davis received a sentence of 4 to 8 years for the robbery and Seals a sentence of 2 to 3 years. The report on Davis reflects no felony conviction, and Davis' most recent conviction was in

1980—possession of marijuana "less than 1 Oz." Seals' record indicates a 19-year-old with two prior convictions for misdemeanor theft. The report on Turner, 21 years old, reflects disorderly conduct (jail sentence) in 1981; third degree assault (jail sentence) in 1982; and on September 3, 1982, a conviction for carrying a concealed weapon. Therefore, Turner's last conviction was approximately 8 months before he robbed Town and Country at knife point. Turner's aggravating affinity for weapons undoubtedly weighed heavily as the trial court pondered an appropriate sentence for Turner. In view of the dissimilar histories displayed by Seals, Davis, and Turner, and in view of Turner's greater turpitude in handling the knife and menacing the clerk during the robbery, imposition of a more severe sentence on Turner was appropriate and justified under the circumstances. We find no abuse of discretion regarding the sentence imposed.

Although we hold in this case that there was no conflict of interest depriving the defendant of his constitutionally guaranteed right to counsel, we must comment further concerning a sole attorney representing multiple defendants, whether by court appointment or by retainer as private counsel.

We note the provisions of Fed. R. Crim. P. 44(c):

> Whenever two or more defendants have been jointly charged . . . or have been joined for trial . . . and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of his right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Nebraska criminal procedure has no counterpart to Fed. R. Crim. P. 44(c).

It is true that *Cuyler v. Sullivan*, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), indicates that a state court may assume there is no conflict of interest relative to representation

of multiple codefendants, and unless the trial court knows or reasonably should know that a particular conflict of interest exists, a state court need not initiate an inquiry into the propriety of multiple representation.

We do not condemn multiple representations in criminal cases, for, as Justice Frankfurter (dissenting) observed in *Glasser v. United States,* 315 U.S. 60, 92, 62 S. Ct. 457, 86 L. Ed. 680 (1942): "Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength against a common attack."

However, as also expressed in *Holloway v. Arkansas,* 435 U.S. 475, 490, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978): "But in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." (Emphasis in original.)

> The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defendants give an informed consent to such multiple representation.

ABA Standards Relating to The Defense Function § 3.5 at 211 (Approved Draft 1971). See, also, Model Code of Professional Responsibility Canon 5, A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client, and DR 5-105, Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer (1984).

There are some illustrative possibilities of a conflict of interest arising out of joint and multiple representations: (1) In planning and executing trial strategy, counsel may make decisions favoring one defendant over another; (2) The fact that counsel appears on behalf of a group of defendants may make some defendants appear guilty by association; (3) At the plea bargaining stage counsel's recommendation to each defendant may be affected by an assessment of the plea's effect on other de-

fendants; (4) In offering defenses at trial, counsel may harm one or more defendants; or (5) At sentencing an argument may occur that one defendant's role was subordinate to that of another defendant. See, *United States v. Agosto*, 675 F.2d 965 (8th Cir. 1982); *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982); *Developments in the Law—Conflicts of Interest in the Legal Profession*, 94 Harv. L. Rev. 1244 (1981).

Nevertheless, a defendant can waive his right to assistance of an attorney unhindered by a conflict of interest. See *Holloway v. Arkansas, supra* at 483 n.5. The standard to determine whether a defendant has effectively waived a constitutional right requires that the waiver be voluntarily, knowingly, and intelligently done, with sufficient awareness of the relevant circumstances and likely consequences. See *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Such standard for measuring a defendant's waiver applies to a waiver of the right to conflict-free counsel. See, *United States v. Agosto, supra; United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978); *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975). Such waiver of the right to conflict-free counsel is permissible provided a defendant "knows what he is doing and his choice is made with eyes open." See *Adams v. U. S. ex rel. McCann*, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942).

We believe that safeguards such as those contained in Fed. R. Crim. P. 44(c) tend to promote and protect the effective administration of the criminal justice system. Consequently, and henceforth, unless it appears that there is good cause to believe no conflict is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel in cases involving joint and multiple representation of criminal defendants.

In carrying out such responsibility the court should elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and potential perils of such conflict, that he has discussed the matter with his attorney or, if he wishes, with outside counsel, and that he voluntarily waives his right to a conflict-free attorney required under the Constitutions, state and federal. See,

*United States v. Dolan, supra; United States v. Curcio, supra.*
Judges should inquire with as much detail as the court's experience and knowledge of the case will permit, and should bear in mind that most defendants are rarely sophisticated enough to evaluate potential conflicts which may arise from joint and multiple representation. See *United States v. Carrigan*, 543 F.2d 1053 (2d Cir. 1976).

Such ounce of procedural prevention regarding conflict of interest may forestall the necessity of a pound of appellate cure in the criminal justice system.

The judgment of the district court is in all respects affirmed.
AFFIRMED.