STATE OF NEBRASKA, APPELLEE, V. ROBERT E. WILLIAMS, APPELLANT.

396 N.W.2d 114

Filed November 7, 1986.    No. 86-016.

116

Patrick W. Healey and Douglas L. Kluender, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

Robert E. Williams appeals the judgment of the district court for Lancaster County, which denied postconviction relief to Williams, see Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1985), on Williams' claim of ineffective assistance of counsel based on his lawyers' alleged conflict of interest. We affirm.

In an evidentiary hearing, as a bench trial provided by §§ 29-3001 et seq. for postconviction relief, the trial judge, as the "trier of fact," resolves conflicts in evidence and questions of fact, including witness credibility and weight to be given a witness' testimony. Cf. *State v. Craig*, 219 Neb. 70, 80, 361 N.W.2d 206, 214 (1985) ("In a bench trial of a criminal case, the court, as the 'trier of fact,' is the sole judge of the credibility of witnesses and the weight to be given to their testimony"). In an appeal involving a proceeding for postconviction relief, the trial court's findings will be upheld unless such findings are clearly erroneous. *State v. Pearson*, 220 Neb. 183, 368 N.W.2d 804 (1985).

As reported in *State v. Williams*, 205 Neb. 56, 287 N.W.2d 18 (1979), in a 1978 trial a jury found Williams guilty of the first degree murders of Patricia A. McGarry and Catherine M. Brooks, notwithstanding Williams' defense of insanity. The jury also found Williams guilty of sexually assaulting one of the victims. Two psychiatrists for the State testified that Williams was not insane at the time of the murders. For the defense, one psychiatrist "could not say [Williams] did not know that what he was doing was wrong," while a second psychiatrist testified Williams "would know his actions were wrong only if he took time to think." 205 Neb. at 63, 287 N.W.2d at 23. Williams' ex-wife, Merrilee, was not a witness in the murder trial. A

three-judge panel sentenced Williams to death for the murders. Williams' defense was conducted by the Lancaster County public defender's office. This court affirmed Williams' conviction and sentence of death.

In *State v. Williams*, 217 Neb. 539, 352 N.W.2d 538 (1984), we affirmed the judgment of the district court, denying an evidentiary hearing on Williams' first motion for postconviction relief. The Lancaster County public defender's office represented Williams in that first hearing for postconviction relief.

Williams, through court-appointed counsel in place of the public defender's office, then filed a second motion for postconviction relief, claiming his trial counsel's conflict of interest was a violation of Williams' constitutional right to effective assistance of counsel. Paul Conley, a member of the public defender's office at the time of Williams' trial for the murders, had represented Williams' wife, Merrilee, in proceedings for dissolution of her marriage with Robert Williams. As evidence for the murder trial, the public defender's office did not seek testimony from Merrilee, namely, that Robert Williams was insane at the time of the murders, evidence which Williams characterized as "critical" to presentation of his insanity defense. In view of *State v. Myers*, 205 Neb. 867, 869, 290 N.W.2d 660, 661 (1980) ("a nonexpert with an intimate personal acquaintance may be allowed to testify as to the sanity or insanity of a defendant"), we ordered an evidentiary hearing "as an opportunity for Williams to establish his allegation that a conflict of interest denied effective assistance of counsel." *State v. Williams*, 218 Neb. 618, 622, 358 N.W.2d 195, 198 (1984).

On October 9, 1985, Williams' lawyer took the videotape deposition of Frances Forget, formerly Merrilee Williams, who testified about her marriage with Robert Williams and postmarital contact with Williams. During that marriage, there were a "number of times" when Merrilee received medical treatment or was admitted to a hospital on account of beatings by Williams. Conduct of such nature persisted until 1976, when Williams physically abused Merrilee and caused her to miscarry. In the spring of 1977 Merrilee petitioned for

dissolution of her marriage with Williams. A decree of dissolution was entered on August 3, 1977. On the morning of August 5 Williams "kidnapped" Merrilee in her employer's parking lot and drove her to a Lincoln park, where, after slashing Merrilee's forehead with a knife and threatening to "ram" the knife in her ear, Williams "raped" Merrilee. Later, on August 5, Williams took Merrilee to a hospital emergency room for treatment of knife wounds which she had sustained during the sexual assault in the park. Police were summoned and took Williams into custody. Williams was released on August 10. The murders of McGarry and Brooks occurred on August 11.

For approximately 1 week after the murders, Merrilee stayed with a psychiatric social worker, Sheralyn Cox. At the suggestion of personnel at a Lincoln "rape crisis clinic," Merrilee, in the company of Sheralyn Cox, departed for California. Referring to the time of the murders on August 11, Merrilee testified she did not believe Williams was "crazy" and "would not say he was crazy," but also testified she did not know whether she had told Sheralyn Cox that Williams was "crazy."

At the second postconviction hearing, Sheralyn Cox testified that Merrilee had "described [Williams] as crazy" and, after the murders of McGarry and Brooks, had made numerous comments "to the effect that [Merrilee] believed her husband to be crazy."

Thomas Hagel, formerly an attorney in the Lancaster County public defender's office and one of Williams' counsel for the murder trial, testified "nobody knew how to get ahold" of Merrilee, whose family would not "even talk" to Hagel, and further testified that he could not recall asking Conley about communications from Merrilee or her whereabouts. Hagel did not confer with Conley about Williams' defense. Conley had "absolutely no involvement" in preparation or trial of Williams' case. In a conference with Hagel shortly after the murder charges were filed, Williams mentioned his "bad feelings" toward Conley on account of the divorce proceedings, but wanted the public defender's office to "stay on the case" and was "adamant" about continued representation by the

public defender's office. The record does not reflect or indicate that any aspect or conduct of Williams' defense would have differed from that contemplated, actuated, or presented by trial counsel if Merrilee had been a witness at the murder trial.

Upon conclusion of the evidentiary hearing the district court concluded that Williams had

> failed to prove that he was denied his Sixth Amendment right to effective assistance of counsel in that:
>
> a. He has failed to show by any credible evidence that an actual conflict of interest existed.
>
> b. He has also failed to show any adverse effect on the performance of his attorneys.

The district court denied postconviction relief to Williams, who appeals claiming ineffective assistance of counsel on account of an actual conflict of interest which adversely affected his trial counsel's performance in Williams' defense to the murder charges.

As a result of Neb. Const. art. I, § 11, and U.S. Const. amend. VI, the right to counsel is the right to effective assistance of counsel. See, *State v. Pearson*, 220 Neb. 183, 368 N.W.2d 804 (1985); *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970). For effective assistance of counsel a defendant is constitutionally entitled to a lawyer's representation free from conflicting interests. *State v. Turner*, 218 Neb. 125, 354 N.W.2d 617 (1984).

> [A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief. [Citation omitted.] But until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. [Citation omitted.]
>
> ... We hold that the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.

*Cuyler v. Sullivan*, 446 U.S. 335, 349-50, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). See, also, *State v. Turner, supra*.

The U.S. Supreme Court stated in *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984):

> The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. [Citations omitted.]
>
> Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt. See *Strickland v. Washington, post,* at 693-696 [citations omitted].

466 U.S. at 659 nn. 25, 26.

After issuing *United States v. Cronic, supra,* but on the same day, the U.S. Supreme Court issued *Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In reference to a claim of ineffective assistance of counsel, the Court in *Strickland* characterized "prejudice" as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome," 466 U.S. at 694, and enunciated a test to determine whether counsel's assistance was "so defective as to require reversal of a conviction":

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

This court has adopted the *Strickland* test, that is, counsel's

deficient performance causing prejudice to the defense, to determine whether a criminal judgment against a defendant must be overturned as the result of ineffective assistance of counsel. See *State v. Pearson, supra.*

In *Strickland v. Washington, supra*, the Court discussed a "per se rule of prejudice" and a "rule of presumed prejudice":

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. See *United States v. Cronic, ante*, at 659, and n. 25. Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost. *Ante*, at 658. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.
>
> One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice. In *Cuyler v. Sullivan*, 446 U. S., at 345-350, the Court held that prejudice is presumed when counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests. Given the obligation of counsel to avoid conflicts of interest and the ability of trial courts to make early inquiry in certain situations likely to give rise to conflicts, see, *e. g.*, Fed. Rule Crim. Proc. 44(c), it is reasonable for the criminal justice system to maintain a fairly rigid rule of presumed prejudice for conflicts of interest. Even so, the rule is not quite the *per se* rule of prejudice that exists for the Sixth Amendment claims mentioned above. Prejudice is presumed only if the defendant demonstrates that counsel "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan, supra*, at 350, 348

(footnote omitted).

*Strickland v. Washington*, 466 U.S. 668, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

As indicated in *Strickland v. Washington, supra*, a conflict of interest, per se, does not annihilate or frustrate a defendant's constitutional right to effective assistance of counsel, necessitating reversal of a judgment in a criminal case. However, there is a presumption of prejudice involving a defendant's constitutional right to effective assistance of counsel when a defendant demonstrates (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected performance by the defendant's lawyer. Such conflicts of interest must be shown to have resulted in counsel's conduct detrimental to the defense.

Regarding prejudice on account of ineffective assistance of counsel, *Strickland* contains the following observation by the Court:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

Putting aside the question whether an actual conflict of interest exists in the case before us, and following the suggestion in *Strickland*, we dispose of Williams' appeal on the basis of presence or absence of prejudice.

Williams argues that "the testimony of Forget at the time of trial would have been more helpful than the testimony given immediately prior to the evidentiary hearing." Brief for Appellant at 6. However, we reach the same conclusion as that of the district court regarding Merrilee Williams (Frances Forget) had she been a defense witness at Williams' trial for the murders. As shown by the record from the standpoint of reasonable and practical probability, Merrilee would have expressed an opinion that Williams was not "crazy" or was sane at the time of the murders. As a likely litotes, that testimony from Merrilee would not have been helpful to Williams' attempted defense of insanity. Implicit in Williams' argument is a large leap in forensic faith and the hypothesis that, during the 7-year interval between the murder trial and the videotape deposition, Merrilee, after reflective revision, had changed her favorable testimony to something less than favorable to Williams. Unlike Williams, we reject a proposed evidentiary principle that mere passage of time necessarily produces a deliberately dichotomous declaration from a witness. A purposeful deterioration in Merrilee's testimony is categorical conjecture.

Williams advances another argument. If Merrilee (Frances Forget) had been a witness in the murder trial and testified that Williams was sane, "skillful counsel" would have been able to "impeach Forget through the testimony of other witnesses." Brief for Appellant at 6. To impeach Merrilee, Williams points to the testimony of Sheralyn Cox, namely, Merrilee's statements that Williams was "crazy." However, even the most skillful of trial advocates would not have been able to alter the Nebraska Evidence Rules and the evidentiary use of an inconsistent statement to impeach a declarant at trial.

Although Neb. Evid. R. 607 (Neb. Rev. Stat. § 27-607 (Reissue 1985)) recites, "The credibility of a witness may be attacked by any party, including the party calling him," Neb. Evid. R. 801 (Neb. Rev. Stat. § 27-801 (Reissue 1985)) provides:

> (3) Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted; and

(4) A statement is not hearsay if:

(a) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (i) inconsistent with his testimony and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . .

As stated in *State v. Johnson*, 220 Neb. 392, 397, 370 N.W.2d 136, 140 (1985): "[W]hat was previously characterized as hearsay available for the purpose of impeachment only has now become substantive evidence of fact contained in the statement, provided the requirements prescribed by Rule 801(4)(a)(i) are satisfied."

Therefore, subject to the exception specified in rule 801(4)(a)(i), a witness' inconsistent statement may be admissible evidence to aid the jury in evaluating that witness' credibility, but a witness' inconsistent statement is not substantive evidence of the matter asserted unless such statement is otherwise admissible under the Nebraska Evidence Rules. See, *State v. Marco*, 220 Neb. 96, 368 N.W.2d 470 (1985); *State v. Brehmer*, 211 Neb. 29, 317 N.W.2d 885 (1982); *State v. Payne*, 205 Neb. 522, 289 N.W.2d 173 (1980).

Merrilee's statements to Sheralyn Cox were not "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." Neb. Evid. R. 801(4)(a)(i). Consequently, Merrilee's statements were hearsay and not substantive evidence on the issue of Williams' mental condition and his defense of insanity. If Merrilee, as a witness in the murder trial, had been impeached by her statements to Sheralyn Cox, Merrilee's credibility and the weight to be given to her testimony would have been matters for evaluation and determination by the jury. See *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986).

Assuming skillful counsel's achieving total discredit of Merrilee at the murder trial, causing the jury to attach no significance whatsoever to her testimony, there were still four psychiatrists as witnesses who supplied substantive evidence on the issue of Williams' insanity. While Williams may be disappointed in the outcome of his trial, he does not suggest, and the record does not disclose, in what manner the absence of

testimony from Merrilee resulted in an unfavorable or detrimental performance by Williams' trial counsel. Thus, from the verdict of guilty, Williams has traveled 360° in postconviction proceedings and returned to the point of beginning, his valid conviction for the two murders.

A defendant can waive the right to assistance of an attorney unhindered by a conflict of interest, provided such waiver is voluntarily, knowingly, and intelligently done with sufficient awareness of relevant circumstances and likely consequences. *State v. Turner*, 218 Neb. 125, 354 N.W.2d 617 (1984). Whether Williams waived his right to counsel free from a conflict of interest is a question not decided by the district court. For that reason consideration of Williams' waiver, if any, is not necessary for disposition of the appeal before us and, therefore, is not reviewed.

After a review of all the record, the "totality of the evidence," see *Strickland v. Washington,* 466 U.S. 668, 695, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), we find that Williams has failed to establish the second component in the two-part test for a claim of ineffective assistance of counsel as the result of a conflict of interest, namely, Williams has not shown that a conflict of interest adversely affected his trial counsel's performance. Therefore, there is no prejudice, either presumed or proved, to Williams as the result of his trial counsel's conduct. We find no error by the district court and, thus, affirm the judgment denying postconviction relief to Williams.

AFFIRMED.