**Randall S. WHITMORE,**
**Plaintiff–Appellee,**

v.

**David AVERY, Superintendent,**
**Community Corrections Center,**
**Defendant–Appellant.**

No. 93–1152.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1993.

Decided June 6, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 11, 1994.*

See also 378 N.W.2d 150, 469 N.W.2d 527.

* Judges McMillian and Wollman would grant the   suggestion for rehearing en banc.

Donald A. Kohtz, Lincoln, NE, for appellant.

Van A. Schroeder, Bellevue, NE, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

The State appeals the grant of Nebraska inmate Randall S. Whitmore's petition for a writ of habeas corpus. The district court held that the Nebraska trial court violated Whitmore's Sixth Amendment right to the effective assistance of counsel when it failed to inquire whether Whitmore had waived his trial counsel's obvious conflict of interest. The State argues that the district court erred in excusing Whitmore's procedural default of this claim under the "fundamental miscarriage of justice" exception to the cause and prejudice standard. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565,

**1428**

115 L.Ed.2d 640 (1991). We agree and therefore reverse.

Whitmore seeks federal habeas relief on two grounds: first, that trial counsel James Davis had an actual conflict of interest at Whitmore's trial that adversely affected counsel's performance; and second, that Douglas County Judge Paul J. Hickman erred in failing to hold a hearing, prior to Whitmore's trial, to consider Davis's obvious conflict of interest. Whitmore raised both claims in a state postconviction proceeding, but the Supreme Court of Nebraska concluded they were procedurally barred because Whitmore and his new appellate counsel knew of the conflict yet did not raise these issues on direct appeal. *See State v. Whitmore*, 238 Neb. 125, 469 N.W.2d 527, 531–32 (1991).

■ Whitmore then commenced this proceeding. After a hearing, the district court granted the writ. The court agreed that Whitmore's federal habeas claims were procedurally defaulted in state court [1] and further concluded that Whitmore did not show cause to excuse this default. However, the court held that the claims were not procedurally barred because they fell within the fundamental miscarriage of justice exception. The court reasoned that this exception is

"akin" to the prejudice prong of the ineffective assistance of counsel standard under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that such prejudice must be presumed once a defendant shows "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980).[2] Turning to the merits, the district court held that Whitmore was entitled to habeas relief because Judge Hickman failed to inquire whether Whitmore had waived attorney Davis's conflict of interest.

■ On appeal, the State argues that the district court erred in applying the fundamental miscarriage of justice exception and in concluding that Whitmore's Sixth Amendment rights were violated by Judge Hickman's failure to inquire.[3] Because we agree with the State that Whitmore's claims are procedurally barred, we do not reach the merits of those Sixth Amendment claims.

■ 1. Whitmore argues that we need not reach the fundamental miscarriage of justice exception because the district court erred in ruling that he did not establish cause for his procedural default. We dis-

1. Judge Heaney's dissent is founded on his conclusion that Whitmore's actual-conflict-of-interest claim is not procedurally barred because the Nebraska Supreme Court "arbitrarily held that Whitmore had defaulted" the issue by not raising it on direct appeal. This question is not properly before us, as it was neither considered by the district court nor argued by Whitmore on appeal. In any event, we disagree with Judge Heaney's conclusion. The Nebraska Supreme Court discussed at length its reasons for holding this claim procedurally barred. *See* 469 N.W.2d at 531–32. It cited in support of this ruling *State v. Pope*, a case in which a conflict-of-interest claim was raised *and considered* on direct appeal, *see* 211 Neb. 425, 318 N.W.2d 883, 885–87 (1982), and then raised again in a postconviction petition based upon alleged additional evidence, *see* 218 Neb. 361, 355 N.W.2d 216 (1984). In *Pope*, the Nebraska Supreme Court held the postconviction claim procedurally barred because the new evidence was not material, 355 N.W.2d at 218, not merely because the claim had previously been raised on direct appeal. This significantly reduces or eliminates the Catch 22 dilemma posited in Judge Heaney's dissent. Thus, the Nebraska Supreme Court in *Whitmore* reasonably construed its earlier decision in *Pope* as requiring a

defendant to at least attempt to raise a known issue of actual conflict on direct appeal. Whitmore failed to do that and therefore his postconviction claim was procedurally barred.

2. We note in passing that, while the district court correctly stated the holding in *Cuyler*, it never explained how attorney Davis's conflict affected his performance at Whitmore's trial. In Whitmore's state postconviction proceeding, Judge Hickman expressly held that Whitmore had failed to prove that Davis's conflict of interest adversely affected his performance at trial.

3. Whitmore argues that Avery waived his right to appeal by failing to object to the magistrate's report and recommendation. We disagree. In *Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985), the Supreme Court held "that a court of appeals may adopt a rule conditioning appeal, when taken from a district court judgment that adopts a magistrate's recommendation, upon the filing of objections with the district court identifying those issues on which further review is desired." We have not adopted such a rule. *See Taylor v.. Farrier*, 910 F.2d 518, 520 (8th Cir.1990); *Nash v. Black*, 781 F.2d 665, 667 (8th Cir.1986).

agree. After his conviction, Whitmore retained different counsel for sentencing and still other counsel for his direct appeal. Both lawyers were aware of attorney Davis's conflict of interest, discussed that issue with Whitmore, but did not raise it either at sentencing or on direct appeal. In the district court, Whitmore argued that appellate counsel were ineffective for defaulting the issue on direct appeal. On appeal he argues that trial counsel Davis was ineffective for failing to place the facts regarding his conflict in the trial record so that it could be effectively raised on direct appeal.

■ We generally do not consider arguments raised for the first time on appeal. *See Warden v. Wyrick,* 770 F.2d 112, 114 (8th Cir.), *cert. denied,* 474 U.S. 1035, 106 S.Ct. 600, 88 L.Ed.2d 579 (1985). But in any event Whitmore's arguments must fail. Counsel's failure to raise an issue on appeal is not the type of cause that excuses a procedural default unless counsel's performance was constitutionally ineffective under *Strickland. See Coleman,* 501 U.S. at 752–55, 111 S.Ct. at 2566–67. We agree with the district court that Whitmore has failed to prove ineffective assistance of counsel; in particular, his appellate counsel's studied decision not to raise the conflict issues on direct appeal was within the broad range of professional competence *Strickland* permits. Moreover, since Whitmore did not raise these ineffective assistance claims in the state courts, we doubt whether they may be raised for the first time in federal court to show cause for his procedural default of the conflict of interest claims here at issue. *See Murray v. Carrier,* 477 U.S. 478, 488–89, 106 S.Ct. 2639, 2645–46, 91 L.Ed.2d 397 (1986). Thus, as the district court recognized, Whitmore's federal habeas claims are procedurally barred unless his default is excused under the fundamental miscarriage of justice exception.

■ 2. The district court made two critical errors in applying the fundamental miscarriage of justice exception. First, the court erred in equating this exception with the prejudice prong of *Strickland.* Prejudice under *Strickland* is one component of the ineffective assistance inquiry. The fundamental miscarriage of justice exception, on the other hand, is "a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* —— U.S. ——, ——, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). To fall within the exception a petitioner must make "a proper showing of actual innocence." *Id.* —— U.S. at ——, 113 S.Ct. at 862. *See also United States v. Olano,* —— U.S. ——, ——, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993) ("the term 'miscarriage of justice' means that the defendant is actually innocent"). The required showing is rigorous:

> [T]he "actual innocence" exception[ ] applies only where the habeas petitioner demonstrates by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty of the crime of which he was convicted.

*Wallace v. Lockhart,* 12 F.3d 823, 827 (8th Cir.1994), citing *Sawyer v. Whitley,* —— U.S. ——, —— – ——, 112 S.Ct. 2514, 2517–18, 120 L.Ed.2d 269 (1992). This standard is neither akin to the prejudice prong of *Strickland,*[4] nor may it be disregarded in the case of procedurally defaulted constitutional claims that would otherwise require no showing of prejudice.

■ Second, the district court erred in failing to apply the actual innocence exception separately to each of Whitmore's procedurally defaulted claims. The district court granted the writ on the ground that Judge Hickman failed to inquire whether Whitmore knowingly waived his attorney's conflict of interest. But the court did not apply the actual innocence exception to that claim. Rather, it excused Whitmore's procedural defaults on the general ground that a conflict of interest claim requires no showing that the conflict prejudiced the defendant at trial.

---

4. "If a showing of actual innocence were reduced to actual prejudice, it would allow the evasion of the cause and prejudice standard.... In practical terms a petitioner would no longer have to show cause, contrary to our prior cases." *Sawyer,* —— U.S. at —— n. 13, 112 S.Ct. at 2522 n. 13.

For the foregoing reasons, we must now determine, with respect to each of Whitmore's claims, whether he has shown "by clear and convincing evidence" that but for the alleged constitutional error no reasonable juror would have found him guilty. *Sawyer,* —— U.S. at ——, 112 S.Ct. at 2525. We consider this issue *de novo,* as the Supreme Court clearly did in *Sawyer.*

■ 3. For the first procedurally defaulted claim, the actual innocence question is whether no reasonable juror would have convicted Whitmore but for Judge Hickman's failure to inquire, prior to Whitmore's trial, into the propriety of attorney Davis representing Whitmore despite his apparent conflict of interest. To meet his burden on this issue, Whitmore must present clear and convincing evidence that, if that inquiry had been made, (i) he would have emerged with different trial counsel, and (ii) the outcome of the trial would have been different. A review of the record reveals that Whitmore has failed to meet the first of these two burdens.

Whitmore and John White were separately charged with unlawfully possessing the same drugs, which the police found in the trunk of a brown Plymouth Valiant. At the outset, Whitmore and White were separately represented. Attorney Davis represented White and successfully opposed the State's motion to consolidate the two cases by arguing that the defendants might have antagonistic defenses.

White's case was tried first to Judge Hickman without a jury. On the eve of Whitmore's trial, with White's case still under submission to Judge Hickman, Whitmore's counsel resigned and three other attorneys declined to represent him. Whitmore then asked Davis for help. After noting the conflict issue and clearing the conflict with White, Davis agreed to represent Whitmore. Whitmore obviously knew of Davis's conflict of interest—he was in court when the State's motion to consolidate was argued—but chose to have Davis represent him. Had Judge Hickman held a hearing and explained the implications of Davis's conflict on the record, would Whitmore have refused Davis's services, or would he have waived the conflict? Whitmore's extensive factual showing in both his state and federal postconviction proceedings is totally silent on this critical question.

Virtually conceding that he would have attempted to waive the conflict, Whitmore argues on appeal that Judge Hickman "should have been obligated to refuse to accept any express waiver" of the conflict. He cites *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), but *Wheat* simply held that a trial court "must be allowed substantial latitude in refusing waivers of conflicts of interest." 486 U.S. at 163, 108 S.Ct. at 1699. *Wheat* also reaffirmed that counsel's multiple representation does not always violate the Sixth Amendment and that courts "must recognize a presumption in favor of [the defendant's] counsel of choice." *Id.* at 164, 108 S.Ct. at 1700. Thus, *Wheat* confirms that Judge Hickman had substantial discretion in dealing with attorney Davis's conflict of interest, and the actual innocence exception requires us to explore how he likely would have exercised that discretion had he conducted a pretrial hearing on the issue.

Had Judge Hickman conducted the pretrial inquiry that the district court found lacking, he would have recognized that the separate trials of White and Whitmore had "significantly reduced the potential for a divergence in their interests." *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1718. With White's trial completed, the only potential conflict remaining for Whitmore's jury trial was that attorney Davis in defending Whitmore might be reluctant to "point the finger" at his other client, White, in front of Judge Hickman, who still had White's case under submission. This is a legitimate concern. But we know that Judge Hickman, a jurist with twenty five years experience, was aware of the conflict and obviously believed that Davis could try Whitmore's case to a jury without prejudicing his own consideration of White's case. In these circumstances, we conclude that Whitmore has failed to prove by clear and convincing evidence that, had Judge Hickman conducted the missing inquiry, he would have rejected Whitmore's waiver of the conflict and removed Davis as Whitmore's trial counsel.

Unable to establish that a pretrial inquiry would have resulted in attorney Davis's re-

moval, Whitmore has no evidence that his subsequent trial would have resulted in a jury finding of actual innocence. Therefore, his failure to inquire claim, the claim upon which the district court granted habeas relief, is procedurally barred.

■ 4. There remains Whitmore's second procedurally defaulted claim—that his Sixth Amendment right to the effective assistance of counsel was violated because attorney Davis labored under an actual conflict of interest at trial. To prevail on the merits of this claim, Whitmore must show that the conflict adversely affected counsel's performance. *See Cuyler*, 446 U.S. at 350, 100 S.Ct. at 1719. However, to excuse his procedural default of this claim under the actual innocence exception, Whitmore must prove by clear and convincing evidence that, but for Davis's conflict, no reasonable juror would have found Whitmore guilty.

Whitmore's theory is that, since Judge Hickman had not yet rendered a verdict in White's case, attorney Davis refrained from pointing the finger at White in Whitmore's defense. The trial record reveals a number of problems with that theory. First, guilt in this case was not an either/or proposition; the State maintained that White and Whitmore were confederates and both were guilty. The drugs were found in the Valiant, which was parked far from the residences of both White and Whitmore. White and Whitmore were separately arrested two days later. White was carrying identification in the name of the fictitious registered owner of the Valiant; Whitmore was in possession of keys for that car. It was undisputed that White and Whitmore were business associates. Prior surveillance had linked White directly to the Valiant. The State persuaded the jury that Whitmore, too, was linked to the drugs found in that vehicle.

Second, it appears that attorney Davis did point the finger at White at Whitmore's trial. Counsel's opening and closing statements were not transcribed, so the trial record does not reveal the relative emphasis given this point. But Davis testified that he told the jury in his opening statement that the drugs belonged to John White:

> I said pure and simple that these drugs were not Randy Whitmore's drugs; they were John White's drugs. The evidence is going to show that John White was a friend; that he helped Randy in his businesses. . . .

Davis's original trial notes corroborate that testimony. Further corroboration is found in a colloquy outside the jury's presence, in which Davis argued to Judge Hickman:

> The defendant has maintained from the beginning that that dope and narcotics found in the 1971 Valiant was not his and belonged to John White. The State's theory of their case . . . is that that dope belonged to John White and Randy Whitmore. . . . that Randy Whitmore was the boss and John White was a mule and . . . . that John White allegedly worked for Randy Whitmore and they were both engaged in drug dealing.

We also note that Davis, while cross examining one of the state's witnesses, reminded the jury that it was John White's fingerprints that were found on items in the Valiant.

Third, we have carefully reviewed the trial tactics that Whitmore says an unconflicted lawyer would have done differently—calling additional witnesses and introducing additional evidence linking White to the drugs—as well as Davis's explanation of his own strategy. Most of the alleged omissions would not have further implicated John White and are therefore of little relevance to the "but for" issue under consideration. The most significant omissions were not calling John White or Whitmore as defense witnesses. Davis gave a rational explanation for not calling these witnesses. Whitmore failed to show that White was willing to testify and did not explain why the testimony of either would have changed the outcome of the trial.

Weighing all of these factors together, we conclude that Whitmore has fallen far short of proving by clear and convincing evidence that, but for Davis's conflict of interest at trial, the jury would not have found him guilty. Accordingly, this claim, too, is procedurally barred.

For the foregoing reasons, the judgment of the district court is reversed and the case is remanded with instructions to dismiss Whit-

more's petition for a writ of habeas corpus. Appellee's motion to dismiss the appeal is denied.

HEANEY, Senior Circuit Judge, dissenting.

Randall Whitmore was not well served by the Nebraska bar in this case. Trial counsel labored under a patent conflict of interest, the trial judge failed to inquire of Whitmore about this conflict, appellate counsel failed to raise the trial judge's failure to inquire as error, and postconviction counsel failed to raise appellate counsel's failure. Again and again Whitmore's various counsel have fallen below acceptable levels of representation in their work on his behalf. The failures, however, did not end there. When trial counsel's constitutionally deficient performance was raised to the Nebraska Supreme Court in Whitmore's motion for postconviction relief, that court also failed Whitmore in arbitrarily holding the claim procedurally barred. Whitmore is again failed by this court's acceptance of that bar as adequate, and it is on this basis that I must dissent.

I

To fully appreciate the position in which Whitmore was placed, some background is necessary. Broadly speaking, Whitmore was charged with possessing drugs with the intent to distribute, as was John White. The two were represented initially by separate counsel, and both opposed consolidation of their trials, in part because of the possibility of antagonistic defenses. White was represented by James Martin Davis, who tried his case to Judge Paul Hickman. According to Davis, the evidence of White's guilt was rather overwhelming, so the only hope in his case was to suppress various items of evidence, including the results of a wiretap. When Davis's trial came to a close, Judge Hickman reserved judgment.

Whitmore was at this time represented by Ralph Smith, who determined about one month before Whitmore's scheduled trial date that although he had been paid tens of thousands of dollars and had taken Whitmore's farm in addition, he would be forced to withdraw as Whitmore's counsel unless significantly more money was forthcoming. Neither Whitmore nor his parents could produce such sums, so Whitmore and his family went shopping for counsel. No one was interested in taking on the case so close to trial. Whitmore sought to communicate with Judge Hickman through the judge's bailiff with the intention of seeking a continuance until he could find counsel. Whitmore was told that there would be no continuance and that he would appear in court with or without counsel.

In the course of this sordid affair, and as his trial date was rapidly approaching, Whitmore spoke with White, who was rather satisfied with Davis's representation. Whitmore then spoke with Davis about his plight, and Davis agreed, after discussions with White, Smith, the prosecutor, and Judge Hickman, that he would represent Whitmore at his trial. Although contradictory evidence appears in the record, certain testimony suggests that Judge Hickman had told Davis there would be no problem with his representing Whitmore because a decision would issue in White's case prior to Whitmore's trial. Further testimony suggests that on the morning Whitmore's trial was to begin, Davis inquired of Judge Hickman whether he had ruled in White's case, and the judge indicated that he had not. Davis, now quite aware that Judge Hickman would brook no delay, went ahead with his representation of Whitmore, well aware of the conflict under which he was laboring.

A full reading of the record reveals that Davis is a very capable lawyer and that he acted with only the best intentions in representing Whitmore. Davis was well-versed in the facts of the case and could represent Whitmore at trial with little preparation. He had spoken with White, and, given the predicament in which Whitmore had found himself, White was pleased that someone was willing to represent Whitmore. And Davis's actions may well have been influenced by what he later labeled "a chickenshit thing that Ralph Smith was ... doing to [Whitmore], pure and simple, taking all his money." App. at 130.

Nonetheless, Davis did not explain to Whitmore the problems he would face in jointly representing White and Whitmore when Whitmore's defense was that the drugs in question belonged to and were in the exclusive control of White. Likewise, Judge Hickman failed to inquire of Whitmore as he was obligated to do under *Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717–18, 64 L.Ed.2d 333 (1980), whether Whitmore had knowingly waived the conflict of interest. Rather, Judge Hickman virtually forced Whitmore into the alternative of representing himself or of being represented by (well-meaning) counsel who labored under a patent conflict of interest.

## II

As the majority outlines, Whitmore has presented two distinct claims regarding conflict of interest. The first hinges on the trial court's failure to inquire about the conflict of interest when it had actual knowledge of the conflict, and the second involves the actual conflict under which trial counsel labored. When Whitmore presented these claims to the Nebraska courts in his motion for postconviction relief, Judge Hickman and the Nebraska Supreme Court held that both claims were procedurally barred. Neither holding appears to have distinguished between the two aspects of the claims, yet this distinction is crucial to the determination of procedural bar.

The standard rule of procedural bar—the only rule on which the Nebraska Supreme Court relied in deciding Whitmore's case—is that

[a] motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal or which were known to the defendant and counsel at the time of the trial and which were capable of being raised, but were not raised, in the defendant's direct appeal.

*State v. Whitmore,* 238 Neb. 125, 469 N.W.2d 527, 531 (1991). The "capable of being raised" requirement generally excludes, for example, claims of ineffective assistance of trial or appellate counsel; appellate counsel because one can hardly be expected to raise one's own incompetence and trial counsel because satisfaction of the two-part *Strickland* test generally requires a postconviction hearing to develop an adequate record. *See, e.g., State v. Dixon,* 223 Neb. 316, 389 N.W.2d 307, 310 (1986).

In this regard, one aspect of Whitmore's conflict-of-interest claim closely resembles standard assertions of ineffective assistance. Unlike the claim that Judge Hickman knew of the conflict and failed to inquire whether Whitmore had knowingly waived the conflict—for which an adequate record appears to have existed such that this issue could have been raised on direct appeal—Whitmore's claim that trial counsel labored under an actual conflict of interest requires a rather developed record. *See Whitmore v. Avery,* No. CV89–L–387, 1992 WL 357771, at *9 n. 3 (D.Neb. July 8, 1992). Although one need not prove *Strickland* prejudice to succeed with an actual conflict-of-interest claim, for prejudice to be presumed "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. To succeed with such a claim, then, it follows that one must develop a record of that which counsel did and did not do; one must, in short, address the issue in a postconviction motion for relief.

The Nebraska Supreme Court tells us otherwise, however, and, to the extent that we seek to ascertain the content of Nebraska state law, we are bound by that court's statement that in Nebraska one must raise an actual conflict of interest on direct appeal. That such a rule inevitably places a defendant in a Catch–22 [1] is of no consequence to the question of whether the Nebraska Supreme Court speaks authoritatively on Ne-

---

1. Should the defendant raise the issue on direct appeal, he or she will be told that there is no evidence in the record to support the assertion of conflict of interest; yet if the defendant waits to develop an adequate record, he or she has now procedurally defaulted. Should a defendant do both, he or she will be accused of having committed the gravest of audacities—attempting to relitigate issues that have already been decided. *See, e.g., State v. Pope,* 218 Neb. 361, 355 N.W.2d 216, 217–18 (1984).

braska procedure, but it is of consequence to the question we must address *de novo*—the question of "whether that law, whatever it may be, is a bar to federal habeas corpus relief. That ultimate question is one of federal law." *Williams v. Lockhart,* 873 F.2d 1129, 1131 (8th Cir.), *cert. denied,* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 333 (1989).

A state court may not assert simply any reason for refusing to address the merits of a defendant's constitutional claims. Rather, when a state court refuses to address the merits of a constitutional claim because of a state procedural rule, that rule must constitute an adequate and independent ground if it is to bar federal habeas corpus review. "[A] state procedural rule is not adequate unless it is strictly or regularly adhered to. If a state applies its rule inconsistently, we are not barred from reaching the federal law claim." *Grubbs v. Delo,* 948 F.2d 1459, 1462–63 (8th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 109, 121 L.Ed.2d 67 (1992). Similarly, if a state procedural rule "appears to be a new rule designed to thwart the assertion of federal rights in the very case under review," then our jurisdiction will not be defeated. *Williams,* 873 F.2d at 1132.

Whitmore has not asserted that Nebraska applies this rule inconsistently[2] (and it is therefore the majority's prerogative to ignore this analysis), but after briefly reviewing the decisions of Nebraska's appellate courts that address conflict-of-interest claims on motions for postconviction relief, I am convinced that the Nebraska courts do not apply this rule consistently. I undertook to survey these decisions because of my puzzlement at how the Nebraska courts expected a

defendant to raise a claim of actual conflict of interest on direct appeal, given the Catch–22 into which such a rule will inevitably place defendants. The answer appears to be that, outside of Whitmore's case, they do not.

Like the Nebraska Supreme Court, when Judge Hickman dismissed Whitmore's motion for postconviction relief, he cited no case that specifically held that conflict-of-interest claims · must be raised on direct appeal. Rather, both courts cited generally to the proposition that any claim that is known to the defendant at the time must be raised on direct appeal. *See Whitmore,* 469 N.W.2d at 531; *State v. Whitmore,* Nos. 111–430, 111–454, slip op. at 4 (Dist.Ct. of Douglas Cty., Neb., May 2, 1989). Both courts then asserted, as if by fiat, that the issue of conflict of interest was available to appellate counsel for direct review, apparently moving immediately from the fact that it was *known* at the time of the direct appeal to the conclusion that it was therefore *available*. Such a syllogism would apply equally to generic claims of ineffective assistance of counsel, for they too are often *known* at the time of the direct appeal. In any event, this application of procedural bar to claims of actual conflict of interest appears to be unprecedented in Nebraska law, and at a minimum, if it does represent Nebraska law, the rule is noteworthy for the number of times it fails to appear in the reported cases.[3]

Both before Whitmore's motion for postconviction relief and since, the Nebraska courts have entertained conflict-of-interest claims that were first raised in postconviction motions. In *State v. Herren,* 212 Neb. 706, 325 N.W.2d 151, 155 (1982), Herren alleged

---

**2.** Although I was at first surprised, given the apparent absurdity of the Nebraska Supreme Court's pronouncement that this conflict-of-interest claim must be raised on direct appeal, that Whitmore did not explore this route around his apparent procedural default, having explored the record a bit more fully I now understand the failure of Whitmore's appointed counsel. When the magistrate judge appointed Whitmore's present counsel, he did so expressly so that counsel could explore the question of procedural bar, but in doing so he, perhaps inadvertently, restricted counsel's avenues of exploration to two: "fundamental miscarriage of justice" (which we often refer to as "actual innocence") and "cause and prejudice." *See Whitmore v. Avery,* No. CV 89–

L–37, slip op. at 2 (D.Neb. July 9, 1991). As the majority opinion indicates, the magistrate judge's understanding of the many procedural barriers that have been constructed to keep us from reaching the merits of petitioners' claims was less than complete. *See supra* at 1429.

**3.** At the risk of belaboring the point, I reiterate that the issue is not, as the majority suggests, *see supra* at 1428 n. 1, whether the Nebraska Supreme Court has ever considered an actual conflict of interest on direct appeal, but whether it has *consistently* held those who fail to raise the issue on direct appeal in procedural default when they seek postconviction relief.

that his trial counsel suffered an actual conflict of interest. The Nebraska Supreme Court found no evidence in the record "to establish this alleged conflict of interest," but nonetheless addressed the merits of the claim and made no mention of procedural default. *Id.* Similarly in *State v. Kerns,* 203 Neb. 278, 278 N.W.2d 348, 350–51 (1979), the court addressed the merits of Kerns's conflict-of-interest claim, again finding the claim lacking, but again failing to mention any aspect of procedural default. Both cases identify the conflict-of-interest claims as species of ineffective assistance, *see id.* 278 N.W.2d at 350; *Herren,* 325 N.W.2d at 154–55, thereby implicitly recognizing the difficulty a defendant would have raising the claim on direct appeal.

Recent decisions of the Nebraska courts also identify conflict-of-interest claims as a subset of ineffective assistance, *see State v. Schneckloth,* 235 Neb. 853, 458 N.W.2d 185, 191 (1990),[4] and they likewise address the merits of those claims that are raised in motions for postconviction relief. In *State v. Nielsen,* 243 Neb. 202, 498 N.W.2d 527, 532–33 (1993), the Nebraska court addressed, however briefly, the merits of Nielsen's conflict-of-interest claim and found it wanting; no mention of procedural default was made. Similarly, in *State v. Sobieszczyk,* 2 Neb.App. 116, 507 N.W.2d 660 (1993), the Court of Appeals of Nebraska addressed Sobieszczyk's conflict-of-interest claim in some detail before dismissing it on the merits; again no mention of procedural default.

Procedural bar was mentioned as a basis for decision in *State v. Wilson,* 224 Neb. 721, 400 N.W.2d 869 (1987), apparently because it had been the basis of Judge Hickman's decision not to address the merits of Wilson's conflict-of-interest claim. 400 N.W.2d at 871. The court nonetheless addressed the merits of the claim, *id.* at 871–72, before concluding that the matter had been previously litigated. *Id.* at 872. In *State v. Nance,* 227 Neb. 581, 418 N.W.2d 598 (1988), the court again mentioned the possibility of procedural bar, though Judge Hickman had failed to address the issue, 418 N.W.2d at 599–600, before then addressing Nance's conflict-of-interest claim and dismissing it on the merits. *Id.* at 601.

In addition to Judge Hickman's involvement in both cases, *Wilson* and *Nance* are procedurally identical in that the withdrawal of counsel on direct appeal brought into play Nebraska's rule 3B of appellate procedure, which provides that when the court allows counsel to withdraw, it reviews all possible claims the defendant might make, "not only to resolve those matters which are specifically called to the court's attention . . ., but also to determine whether any possible errors exist." *Nance,* 418 N.W.2d at 600; *see Wilson,* 400 N.W.2d at 872. In short, the conflict-of-interest claims in both cases were held not to have been defaulted, but to have already been litigated before the Nebraska Supreme Court (*sua sponte,* so to speak).

So, while Whitmore's appellate counsel appears to have been ineffective for failing to raise the claim that the trial court failed to inquire about the conflict of interest (particularly given the Nebraska Supreme Court's then recent decision in *State v. Turner,* 218 Neb. 125, 354 N.W.2d 617 (1984)),[5] they could hardly be held ineffective for their "studied decision" not to raise the actual conflict-of-interest claim on direct appeal, but to instead wait until an adequate record could be developed. *See Whitmore v. Avery,* No. CV89–L–387, 1992 WL 357771, at *9 n. 3 (D.Neb. July

---

4. *Schneckloth,* one of the few potentially relevant decisions cited by the Nebraska Supreme Court in *Whitmore, see* 469 N.W.2d at 531, is in fact utterly irrelevant in all material respects. Schneckloth was tried with two co-defendants, but was represented individually at trial. A single public defender represented all three defendants in a consolidated appeal. In his motion for postconviction relief, Schneckloth then asserted that his appellate counsel's joint representation prejudiced him in that his trial counsel

failed to present a defense antagonistic to his co-defendants. This rather absurd argument—that joint appellate representation affected trial strategy—was understandably rejected by the Nebraska Supreme Court, but that holding has no bearing whatsoever on Whitmore's case.

5. Unfortunately, Whitmore's postconviction counsel failed to assert that his appellate counsel were ineffective for failing to raise this issue. *See Whitmore,* 469 N.W.2d at 532.

8, 1992). Given the decisions of the Nebraska Supreme Court to that date (and since, for that matter) they had every reason to believe the issue would be addressed by the courts if raised in a motion for postconviction relief. Instead, the courts arbitrarily held that Whitmore had defaulted. We need not recognize this holding as an adequate and independent state ground, and I refuse to do so, which leads me then to the merits of Whitmore's claim that his trial counsel labored under an actual conflict of interest.

### III

On the merits, it may be true that Whitmore has not presented clear and convincing evidence that but for counsel's conflict of interest, he would have been found not guilty. *See supra* at 1430–31.[6] Such is, of course, not the standard when addressing the merits of a claim of actual conflict of interest absent the need to clear any procedural hurdles. Rather, the question is whether Whitmore's trial counsel actively represented conflicting interests in a manner that adversely affected his representation of Whitmore. *See Cuyler,* 446 U.S. at 348, 100 S.Ct. at 1718.

There can be no question but that Whitmore's trial counsel represented conflicting interests. Whitmore's co-defendant, John White, had been represented by the same counsel in a bench trial to Judge Hickman, who had reserved judgment. White's case was therefore still pending when Whitmore's jury trial, also before Judge Hickman, took place. Counsel was therefore forced to represent Whitmore, whose defense was to assert that the drugs belonged to White, while constantly keeping in mind that Judge Hickman had yet to rule on White's case. This is a textbook case of counsel actively representing conflicting interests. *See United States v. Auerbach,* 745 F.2d 1157, 1162 (8th Cir. 1984) ("An actual conflict occurs when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other.").

Did concerns about White's case affect counsel's performance? If they did not, counsel would truly have performed a Herculean feat. The district court did not address this issue, *see Whitmore v. Avery,* No. CV89–L–387, 1992 WL 357771, at *9 (D.Neb. July 8, 1992); *see also supra* at 1428 n. 2, so at a minimum we should remand to give it that opportunity (though I agree with Avery that it erred in failing to rule on all of Whitmore's claims when it had the opportunity, *see* Avery Br. 45–48). Were we to rule on this issue in the first instance, I think there can be little question that counsel's performance was adversely affected.[7] Whitmore need not show prejudice under *Strickland,* which would admittedly be a more difficult test to satisfy, *see Simmons v. Lockhart,* 915 F.2d 372, 378 (8th Cir.1990); he need simply prove

---

**6.** Whether this is the appropriate standard remains, to some degree, an open question in that the Supreme Court has recently decided to review this court's decision to extend the *Sawyer* analysis to determinations of guilt and innocence. *See Schlup v. Delo,* —— U.S. ——, 114 S.Ct. 1368, 128 L.Ed.2d 45 (1994) (granting certiorari) and 62 U.S.L.W. 3664 (April 5, 1994) (identifying questions presented).

**7.** The majority notes "in passing" that Judge Hickman expressly found that Whitmore had failed to prove that counsel's performance had been adversely affected in ruling on Whitmore's motion for post-conviction relief. *See supra* at 1428 n. 2. If by mentioning this fact the majority intends to imply that we are obligated to defer to such a "finding," it is mistaken. Just as we need not defer to a state court's conclusion that a petitioner's counsel was constitutionally effective, because that issue presents a mixed question

of law and fact, *see Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070, so too are the questions of whether counsel suffered under an actual conflict of interest and whether that conflict adversely affected counsel's performance open to *de novo* review on collateral attack. *See Cuyler,* 446 U.S. at 341–342, 100 S.Ct. at 1714–1715.

Even were we so bound in principle, there is no evidence that the material facts were sufficiently developed before the state motion court (all of the depositions in the record appear to have been generated only after the magistrate judge appointed counsel for Whitmore and Judge Hickman refused to hold an evidentiary hearing) to require deference. *See* 28 U.S.C. § 2254(d)(2), (3). In addition, any such "finding" by Judge Hickman was pure dicta in light of his holding that Whitmore's failure to raise the issue on direct appeal constituted procedural default. It is only this latter ruling that the Nebraska Supreme Court reviewed and affirmed.

that counsel's performance was adversely affected.

Such a showing can be made in a variety of ways, but all such showings are by their nature somewhat speculative: this inquiry inevitably turns not on what counsel did, but on what counsel failed to do. *See Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426 (1978) ("in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing" (emphasis in original)). Often an adverse effect is shown through an alternative defense that was not pursued because of the effect such a defense would have on counsel's other client, or the showing may be made that evidence was not introduced or pursued on cross-examination that would tend to implicate the other client. The petitioner need not show that such an alternative course would have been successful (such a showing would border on the prejudice showing required under *Strickland* ), but he simply needs to show that such an alternative was available and that it " 'possessed sufficient substance to be a viable alternative.' " *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir.1988) (quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985)), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3215, 106 L.Ed.2d 566 (1989).

It does not appear that this avenue of relief was the focus of the proceedings below. As noted earlier, the magistrate judge failed to rule on this claim, focusing instead on the claim that Judge Hickman was required to inquire whether Whitmore had knowingly and intelligently waived counsel's conflict of interest—as the judge was clearly required to do under *Cuyler*.[8] Similarly, Whitmore's appellate counsel has focused his attention on holding on to the magistrate judge's ruling rather than on alternative grounds for granting the writ. Although there are likely other

ways in which it could be shown that Davis's performance was adversely affected by the conflict of interest under which he suffered, I will pursue but one possible adverse effect that my examination of the record has revealed: namely, his failure to consider calling White to the stand.

Davis has testified that he was certain White would be found guilty and that as a result the pending verdict in White's case did not affect his representation of Whitmore. *See* App. at 72, 105, 111. Outside of possible possession charges for small amounts of drugs, the only significant quantity of drugs tied to Whitmore was found in an automobile (a Plymouth Valiant known as the "brownmobile") driven by White. When Whitmore was arrested at his girlfriend's residence, rings of keys were found which Whitmore admitted to the police belonged to him. One ring contained, *inter alia*, keys for the Plymouth Valiant and for White's apartment. Whitmore asserts that the keys belonged to White, which White now admits, and that White had asked him to give them to a mutual friend who was planning on staying at White's apartment. White drove the car and also possessed keys to the car.

Neither White nor Whitmore testified in Whitmore's trial. Whitmore indicates that he wanted to testify but that Davis decided he should not. Davis testifies that putting Whitmore on the stand would open the door to damaging information on cross-examination and that he feared Whitmore might perjure himself. Similarly he asserts that if he called White to support the defense theory that the keys in question belonged to White, on cross-examination White would "bury" Whitmore. Davis also asserts that there is no way that White would not invoke his Fifth Amendment privilege.

The problems with these views are apparent. What Davis is actually saying is that based on what he knew from White about

---

8. Judge Hickman, both in his denial of Whitmore's motion for postconviction relief and in his deposition, repeatedly suggests that he was under no such obligation because the Nebraska Supreme Court's *Turner* decision was not handed down until shortly after Whitmore's trial. The requirements of the Sixth Amendment had been earlier laid out by the U.S. Supreme Court in *Cuyler*, which was not an assertion of the Court's supervisory powers over the lower federal courts (and therefore not binding on him) but was instead a § 2254 proceeding involving a petitioner held by the Pennsylvania authorities, the holding of which was as binding on Judge Hickman as the later holding in *Turner*.

Whitmore's participation in the offense, there is no way that he could risk White testifying, and that any sensible defense attorney (such as himself) would advise White not to take the stand. These scenarios have an obvious flaw: they are both predicated on Davis representing both White and Whitmore. Had a conflict-free attorney represented Whitmore, such an attorney would likely have tried to put White on the stand to corroborate the defense view of the control over the "brownmobile" and the ownership of its keys. Such a conflict-free attorney would also not be encumbered by whatever confidential knowledge Davis apparently has of White's views on Whitmore's participation in these offenses. Davis might well be correct that White would bury Whitmore, but he might equally well be incorrect, and he would have little basis for such a view absent his conflict-laden representation.

The Ninth Circuit recently decided a case in which counsel represented two suspects (who happened to be brothers) in a murder investigation. *See Sanders v. Ratelle,* 21 F.3d 1446 (9th Cir.1994). Only one brother was charged (Sheldon), but it was apparently the wrong one because the clients' mother told counsel that the other brother (Xavier) had confessed his crime to her, and Xavier confirmed this to counsel. When counsel called Xavier as an exculpatory witness in Sheldon's trial, he (counsel) advised Xavier to invoke the Fifth Amendment, despite Xavier's willingness to testify to his role in the offense. *Id.* at 1448–49. Despite the lack of any evidence from counsel to support such a view, the court held that it was counsel's conflicting loyalties that caused him to instruct the key exculpatory witness not to testify. The court stated that "even if [counsel] concluded that he … could 'have his cake and eat it, too,' by arguing Xavier's guilt to the jury in an attempt to exonerate Sheldon while at the same time preventing Xavier from incriminating himself," the act of advising Xavier not to testify alone was sufficient to prove that counsel's performance on Sheldon's behalf had been adversely affected. *See id.* at 1453–54.

Davis did not reach the point of counseling White not to testify in this case because he simply decided not to call White for, in his view, there was no way White would testify. Of course Davis was correct: with him as White's counsel there was no way White would testify.

## IV

Although Whitmore need not prove *Strickland* prejudice to obtain relief in this case, it is worth noting that, according to Judge Hickman, "it is evident from the amount of time the jury deliberated that Counsel made an impression on the jury favorable to the Defendant." *State v. Whitmore,* Nos. 111–430, 111–454, slip op. at 7 (Dist.Ct. of Douglas Cty., Neb., May 2, 1989). This was, if we are to believe Judge Hickman, a close case despite the various outrages suffered by Whitmore at the hands of his lawyers and the trial judge. Despite the many ways in which attorney after attorney has failed to represent Whitmore adequately—and despite the many obstacles that have been placed in the way of habeas petitioners seeking review of their claims on the merits—Whitmore has arrived in this court with a claim that we may, and in my view should, address on the merits. Although it would probably be best if we remanded the merits of that claim to the district court in the first instance, having reviewed the record in this case, I can say that there is ample evidence to support the claim that Davis suffered under an actual conflict of interest that adversely affected his performance on Whitmore's behalf. Davis very likely meant well in taking on Whitmore as a client, for by that point both his first attorney (Ralph Smith) and Judge Hickman had placed Whitmore in an unenviable position, but Davis's intentions in no way obviate what is quite clearly a case of an attorney struggling to serve two masters. *See Cuyler,* 446 U.S. at 349, 100 S.Ct. at 1718–19. Davis may well have done the best that he could do under the circumstances, and I cannot say that had Whitmore been represented by different counsel the outcome would have been different. But we need not make such a finding to grant Whitmore the relief he seeks. Counsel's performance was adversely affected by his representation of White and Whitmore, and Whitmore's right to the assistance of counsel under the Sixth Amendment

is inviolate; it is not subject to a harmless-ness analysis, *see Holloway,* 435 U.S. at 489, 98 S.Ct. at 1181; *Chapman v. California,* 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828 & n. 8, 17 L.Ed.2d 705 (1967), so once we have determined that it has been violated, we have no choice but to issue the writ. Because the majority avoids such a holding by accepting the Nebraska Supreme Court's arbitrary imposition of this Catch–22–like procedural requirement on Whitmore, I am compelled to dissent.