**Randall S. WHITMORE,
Plaintiff–Appellee,**

v.

**David AVERY, Superintendent,
Community Corrections Center,
Defendant–Appellant.**

No. 93–1152.

United States Court of Appeals,
Eighth Circuit.

Submitted May 5, 1995.

Decided Aug. 7, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 26, 1995.[*]

* Arnold, Chief Judge, McMillian, Wollman and Murphy, Circuit Judges, would grant the suggestion for rehearing en banc.

Donald A. Kohtz, Asst. Atty. Gen., for appellant.

Van A. Schroeder, Bellevue, NE, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

The district court granted Nebraska inmate Randall Whitmore a writ of habeas corpus on the ground that his trial counsel provided ineffective assistance due to a conflict of interest. *Whitmore v. Avery,* 1992 WL 357771 (D.Neb.1992). The State appealed, and we reversed, over Judge Heaney's dissent, on the ground that Whitmore's claims are procedurally barred. *Whitmore v. Avery,* 26 F.3d 1426 (8th Cir.1994). Because the issue of procedural bar required us to apply the actual innocence exception to that doctrine, the Supreme Court vacated our judgment and remanded "for further consideration in light of *Schlup v. Delo,* 513 U.S. [——], 115 S.Ct. 851 [130 L.Ed.2d 808] (1995)." *Whitmore v. Avery,* —— U.S. ——, 115 S.Ct. 1086, 130 L.Ed.2d 1056 (1995). For the following reasons, we reinstate our prior decision.

Our initial decision applied the legal standard for actual innocence adopted by the Supreme Court in *Sawyer v. Whitley,* 505 U.S. 333, 335–39, 112 S.Ct. 2514, 2517–18, 120 L.Ed.2d 269 (1992): whether the habeas petitioner has "demonstrate[d] by clear and convincing evidence that, but for the alleged constitutional error, no reasonable juror would have found the petitioner guilty of the crime of which he was convicted." In *Sawyer,* the petitioner claimed he was actually innocent of, that is, ineligible for the death penalty. This is not a death case; to avoid his procedural defaults, Whitmore argues that he is actually innocent of the crime. However, our court had applied the *Sawyer* standard to this type of actual innocence claim in *Wallace v. Lockhart,* 12 F.3d 823, 827 (8th Cir.1994), and our panel of course followed that controlling precedent.

In *Schlup,* the Supreme Court clarified the actual innocence standard to be applied in

this type of case. The Court held, first, that a claim of actual innocence of the crime "requires petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial." — U.S. at —, 115 S.Ct. at 865.[1] Second, if the petitioner satisfies this demanding burden, the merits of his actual innocence claim will be governed by a less rigorous standard than that of *Sawyer:* whether petitioner has demonstrated "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." — U.S. at —, 115 S.Ct. at 867. The *Schlup* standard governs this case. Whitmore argues that we must therefore affirm the grant of habeas corpus relief or, at a minimum, remand to the district court for application of this standard. We disagree.

■ The district court did not base its grant of habeas relief on Whitmore's likely innocence. Rather, the court concluded, erroneously in our view, that there is a fundamental-miscarriage-of-justice exception to procedural bar that requires no showing of actual innocence for ineffective assistance claims based upon counsel's alleged conflict of interest. The district court based this conclusion on the presumption of prejudice that is applied in considering the merits of such a claim. However, as *Schlup* has now confirmed, the requisite showing of actual innocence is not related to the merits of the habeas claim; rather, it is "a gateway through which a habeas petitioner *must* pass to have his otherwise barred constitutional claim considered on the merits." — U.S. at —, 115 S.Ct. at 861 (emphasis added), quoting *Herrera v. Collins,* — U.S. —, —, 113 S.Ct. 853, 862, 122 L.Ed.2d 203 (1993). Thus, we must again examine the actual innocence question, this time applying the standard as articulated in *Schlup.*

■ Whitmore's federal habeas petition raises two procedurally defaulted claims. He first contends that his trial judge failed to conduct a pretrial inquiry into whether Whit-

more's trial attorney could represent him at trial despite an apparent conflict of interest. This claim is irrelevant to the actual innocence inquiry under *Schlup.* As we explained in our initial opinion, Whitmore failed to establish that such an inquiry would have led to removal of his trial counsel. *See* 26 F.3d at 1430–31. Since the curing of this alleged constitutional error would not have affected Whitmore's trial in any way, the claim is not supported by "new reliable evidence that was not presented at trial," and the actual innocence exception under *Schlup* is unavailable.

■ Second, Whitmore argues that his Sixth Amendment right to counsel was violated because his attorney labored under an actual conflict of interest at trial. This claim includes an allegation that an unconflicted attorney would have presented additional evidence at trial, principally the testimony of defendant Whitmore and counsel's other client, John White. These allegations of additional evidence place this defaulted claim within the purview of *Schlup.* However, as we noted in our initial decision, "Whitmore failed to show that White was willing to testify and did not explain why the testimony of either would have changed the outcome of the trial." 26 F.3d at 1431. Therefore, as to this claim, Whitmore failed to establish "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence," *Schlup*'s legal standard of actual innocence. — U.S. at —, 115 S.Ct. at 867.

Whitmore failed to prove that his case would have reached the trial jury in a significantly different evidentiary posture had the constitutional errors alleged in his two procedurally defaulted claims not occurred. In these circumstances, the claims are procedurally barred, and his petition for a writ of habeas corpus must be denied.

HEANEY, Senior Circuit Judge, dissenting.

The heart of this case is Randall Whitmore's claim that trial counsel's patent con-

---

1. The Court explained: "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." — U.S. at —, 115 S.Ct. at 861.

flict of interest prevented him from presenting to the jury evidence that would have established his innocence. Due to errors by subsequent counsel, an unprecedented procedural ruling by the Nebraska Supreme Court, and this court's insistence on sidestepping the merits, it appears Whitmore will never get the opportunity to prove his claim.

Because the majority misapplies the standard of *Schlup v. Delo*, 513 U.S. ——, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), to the facts of this case, proceeding without the benefit of an adequately developed record of factual findings, I dissent. Again the court marches steadfastly down a path of rigid formalism, waging what Justice Blackmun has called a "crusade to erect petty procedural barriers in the path of any state prisoner seeking review of his federal constitutional claims." *Coleman v. Thompson*, 501 U.S. 722, 758–59, 111 S.Ct. 2546, 2569, 115 L.Ed.2d 640 (1991) (Blackmun, J., dissenting). Because the majority pushes its efforts to evade the merits of Whitmore's constitutional claims beyond even the limits set by the Supreme Court in *Schlup*, I am compelled again to dissent.

The core of my disagreement remains my conviction that the majority erred by accepting a novel, arbitrary, procedural holding of the Nebraska Supreme Court as an adequate state ground barring federal habeas review of the constitutionality of Whitmore's conviction. Accordingly, I firmly adhere to my earlier dissent. These additional comments address, first, the majority's refusal to remand this case for the factual findings necessary for resolution under *Schlup*; and second, and more broadly, the disturbing implications of this court's emergent willingness to abdicate its responsibility to protect American citizens from unconstitutional confinement through judicious consideration of the merits of petitions for writs of habeas corpus.

## I.

As outlined in my earlier dissent, I do not believe that Whitmore's federal habeas claim of actual attorney conflict of interest was barred by his failure to raise the issue on direct appeal in the state courts. On the merits, of course, Whitmore has made a strong case for habeas relief on the ground that his trial counsel labored under an actual conflict of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In my view, the conflict intolerably tainted the state court trial, deprived Whitmore of effective advocacy of his actual innocence, and therefore entitles him to a new trial. Under *Holloway*, 435 U.S. at 489, 98 S.Ct. at 1181, this violation of Whitmore's Sixth Amendment right to effective, unconflicted assistance of counsel may not be overlooked as harmless error. Nevertheless, the majority insists on deploying the doctrine of procedural bar to evade the merits of Whitmore's claim, and we again witness a federal court's acquiescence in the incarceration of a man who may have been convicted in violation of the Constitution but who will never have the opportunity to establish his innocence in a fair and constitutional hearing.

Assuming, as the majority concludes, that Whitmore's claim of actual conflict of interest had been bindingly procedurally defaulted in the Nebraska state courts, a proper disposition of this case under *Schlup* requires a remand to the district court to develop a record on the question now before us. Whitmore maintains that he is innocent of the crime of which he was convicted, that trial counsel labored under an actual conflict of interest, and that the conflict prevented trial counsel from presenting an effective defense. Absent the conflict of interest, Whitmore argues, effective counsel would have presented evidence implicating John White, who was arrested at the same time, charged with the same crime, represented by the same attorney, and whose separately tried case was pending before Judge Hickman at the time of Whitmore's trial. As the majority correctly notes, Whitmore's claim of ineffective assistance of trial counsel falls squarely within the actual innocence exception of *Schlup*.

Where a habeas petitioner asserting innocence seeks to overcome a procedural bar, *Schlup* directs federal courts to apply the standard of *Murray v. Carrier*, which asks whether "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. 478, 496, 106

S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). As the Court's exegesis in *Schlup* makes clear, this standard "requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." —— U.S. at ——, 115 S.Ct. at 868. We are to presume "that a reasonable juror would consider fairly all of the evidence presented," and "conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.* The record before us is devoid of the necessary findings of fact on which to base such a judgment. In my view, it is the province of the district court to take evidence, hear testimony, evaluate credibility, and determine whether Whitmore can prove his claim of innocence. The magistrate judge specifically declined to make findings of fact as to Whitmore's actual conflict-of-interest claim because he recommended that habeas relief be granted on Whitmore's first claim, namely, that the trial judge failed to inquire into the conflict and Whitmore's knowledge of it as required by *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). The magistrate stated:

> Because of my conclusion on Claim 1, I do not at this time address Claim 2. Evidence has been adduced on Claim 2, and it is under submission. In the event that my recommendation for relief on Claim 1 is not accepted, therefore, I can reconsider that evidence ... to determine whether the existence of the conflict of interest actually affected the representation of the petitioner at trial.

*Whitmore v. Avery,* No. CV 89–L–387, slip op. at 14, 1992 WL 357771 (D.Neb. Oct. 20, 1992). Consequently, the magistrate made no record on the critical question now confronting us: whether, as the majority puts it, Whitmore's "case would have reached the trial jury in a significantly different evidentiary posture," *supra* slip op. at 4, had trial counsel not labored under a patent conflict of interest. The need for an evidentiary record to be developed in the district court is particularly striking in light of the fact that Judge Hickman denied Whitmore's request for an evidentiary hearing on this very issue in his state postconviction proceeding. As this court has consistently held, "[i]f relevant facts are in dispute and the state court did not hold a fair evidentiary hearing, the district court must grant an evidentiary hearing in a habeas corpus action." *Lindner v. Wyrick,* 644 F.2d 724, 729 (8th Cir.), *cert. denied,* 454 U.S. 872, 102 S.Ct. 345, 70 L.Ed.2d 178 (1981). *Accord, e.g., Jensen v. Satran,* 651 F.2d 605 (8th Cir.1981), *cert. denied,* 460 U.S. 1007, 103 S.Ct. 1244, 75 L.Ed.2d 475 (1983); *Wallace v. Lockhart,* 701 F.2d 719, 730 (8th Cir.), *cert. denied,* 464 U.S. 934, 104 S.Ct. 340, 78 L.Ed.2d 308 (1983); *Spillers v. Lockhart,* 802 F.2d 1007, 1009 (8th Cir.1986).

*Schlup* reinforces the importance of deciding procedural bar issues only with the benefit of properly developed factual records. In *Schlup,* the Supreme Court instructed that the case be remanded to the district court for further proceedings "[b]ecause both the Court of Appeals and the District Court evaluated the record under an improper standard...." —— U.S. at ——, 115 S.Ct. at 869. A similar course of action is required in the case before us. The rationale for remand to the district court is even stronger here than in *Schlup:* not only did this court apply an erroneous legal standard to the record, but the magistrate judge below made no findings as to Whitmore's second claim, which is now the dispositive issue before us. Without the results of an evidentiary hearing on the issue, we cannot intelligently determine whether Whitmore can establish that his trial counsel's patent conflict of interest " 'has probably resulted in the conviction of one who is actually innocent,' " —— U.S. at ——, 115 S.Ct. at 864 (quoting *Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649–50). By proceeding without the benefit of relevant district court findings, the majority relies on speculation as to what Whitmore would or would not be able to show if given the opportunity. While the majority's conclusions no doubt find some support in the record, they are no substitute for giving Whitmore the benefit of a decision based on evidence presented to the district court. It is also worth noting that a remand to the district court would impose little burden on the judicial system, as the magistrate appears to have

already taken evidence and retained the actual conflict-of-interest issue under submission.

Based on my review of the extant record, I strongly suspect that it is more likely than not that no reasonable juror would have voted to convict Whitmore had unconflicted trial counsel introduced evidence to establish his innocence by implicating John White as the exclusive owner of the drugs. Of course, I cannot make a definitive conclusion one way or the other because the record lacks the necessary findings of fact. In sum, by ruling without a remand the majority misapplies *Schlup* to the facts of this case.

## II.

As this case amply demonstrates, the law of procedural bar has become a serious impediment to our obligation to ensure that justice is done. Courts including this one have lost sight of the critical importance of habeas corpus review to the preservation of the liberties and rights secured by our federal Constitution. Habeas corpus, once taken seriously as the "great writ of liberty," now bears that label with irony, if at all. *See, e.g., Darr v. Burford,* 339 U.S. 200, 225, 70 S.Ct. 587, 600–01, 94 L.Ed. 761 (1950) (Frankfurter, J., dissenting) (" 'The great writ of liberty' ought not be treated as though we were playing a game."). No longer can it fairly be said that "fundamental fairness is the central concern of the writ of habeas corpus." *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984). Instead, federal courts too often sacrifice the vindication of constitutional rights on the altars of federalism, finality, and state sovereignty. In my view, only skewed understandings of those concepts can serve to justify acquiescence in the unconstitutional confinement of a state prisoner. Federalism is not advanced when state courts are permitted to insulate violations of Americans' constitutional rights from federal habeas review. " 'Federalism is a device for realizing the concepts of decency and fairness which are among the fundamental principles of liberty and justice lying at the base of all our civil and political institutions.' " *Coleman,* 501 U.S. at 759, 111 S.Ct. at 2570, 115 L.Ed.2d at

675 (Blackmun, J., dissenting) (quoting W. Brennan, *Federal Habeas Corpus and State Prisoners: An Exercise in Federalism,* 7 Utah L.Rev. 423, 442 (1961)). While finality of judgments remains an important and necessary component of our criminal justice system, that goal must give way when it conflicts with our underlying duty to do justice and uphold the Constitution. The Supreme Court has yet to repudiate its statement that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged." *Sanders v. United States,* 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963). Likewise, I had thought that the Supremacy Clause and the Reconstruction Amendments put to rest any contention that states' rights—even the apparently sacrosanct right to procedural inflexibility—trumped the enforcement of federal constitutional protections. I cannot state my position any more clearly than did James Madison: "Justice is the end of government. It is the end of civil society." The Federalist No. 51 (J. Madison). By refusing to consider the potentially meritorious claims of a potentially innocent prisoner like Whitmore, this court exhibits an unsettling inattentiveness to the basic duty of federal courts: to uphold the rights guaranteed to all citizens by the Constitution.

This case sheds stark light on the serious unfairness that can attend the attribution of attorney error to the prisoner. Actual guilt or innocence has become irrelevant to the availability of habeas review; instead, one's ability to obtain federal review turns upon the quality of one's lawyer. For example, the record before us shows that Whitmore expected his new counsel at sentencing, William Gallup, to raise before Judge Hickman the issue of trial counsel's conflict of interest. At sentencing, Gallup argued a motion for new trial, but made no mention of trial counsel's conflict. Gallup's failure sealed Whitmore's fate: his claim of unconstitutional conviction had not been preserved for review on direct appeal, as the Nebraska Supreme Court now appears to require. Whitmore could not raise an issue on direct appeal that had not been preserved in the trial court; therefore, he could not obtain state collateral

review of his federal constitutional claim; therefore, federal habeas review is procedurally barred. No civil remedy against Gallup will serve to free Whitmore if, in fact, he is innocent. Indeed, Gallup's error was but one of the many that have plagued Whitmore's journey through the courts.

The solution to this unacceptable imbalance in priorities is to me clear. Consistent with the binding precedents of the Supreme Court, including those setting forth the doctrine of procedural bar, federal courts ought to recognize that, as the Supreme Court stated in *Schlup*, "habeas corpus is, at its core, an equitable remedy." —— U.S. at ——, 115 S.Ct. at 863. The Court noted that it had "consistently relied on the equitable nature of habeas corpus to preclude application of strict rules of res judicata," and that "a habeas court must adjudicate even a successive habeas claim when required to do so by the 'ends of justice.'" *Id.* (quoting *Sanders*, 373 U.S. at 15–17, 83 S.Ct. at 1077–78). This court should have reached the merits of Whitmore's claim by refusing to permit an arbitrary decision of the Nebraska Supreme Court to defeat our habeas review of the constitutionality of Whitmore's conviction. Now, on remand from the Supreme Court, the "ends of justice" require that the court grant Whitmore an evidentiary hearing to establish his right to pass through the gateway of the actual innocence exception to the procedural bar pursuant to *Schlup*. Anything less is an affront to the "fundamental fairness" which the writ of habeas corpus is intended to secure.

I respectfully dissent.